UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOE,

*Plaintiff,*

v.                                                     Civil Action No. 20-3553 (TNM)

UNITED STATES OF AMERICA, *et al.*,

*Defendants*.


**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FEDERAL DEFENDANTS' COMBINED [1] MOTION FOR
PARTIAL DISMISSAL, AND [2] MOTION FOR A MORE DEFINITE STATEMENT**

## <u>TABLE OF CONTENTS</u>

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND……………………………..2

LEGAL STANDARDS…………………………………………………………………...8

ARGUMENT……………………………………………………………………………10

   I.  ALL CLAIMS AGAINST THE UNITED STATES SHOULD BE DISMISSED ……..10

      A. Pursuant to the Westfall Act, the United States Has Been Substituted as
         Defendant for Plaintiff's Tort Claims 6-8 to the Extent Such Claims are
         Supported by Defendant Smith's Certified Conduct………………………………...10

      B. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims
         Against the United States Due to Plaintiff's Failure to Exhaust Administrative
         Remedies …………………………………………………………………………12

      C. Plaintiff Fails to State a Claim Upon Which Relief May be Granted With
         Respect to her FTCA Claims Against the United States………………………….13

  II.  PLAINTIFF'S TITLE VII DISPARATE TREATMENT CLAIMS AGAINST
      ATTORNEY GENERAL GARLAND ARISING BEFORE JANUARY 26, 2018,
      SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE
      REMEDIES……………………………………………………………………………15

 III. PLAINTIFF'S TITLE VII DISPARATE IMPACT CLAIM AGAINST ATTORNEY
      GENERAL GARLAND SHOULD BE DISMISSED FOR FAILURE TO TIMELY
      ADMINISTRATIVELY EXHAUST AND FAILURE TO STATE A COGNIZABLE
      CLAIM………………………………………………………………………………...19

      A. Plaintiff Failed to Timely Administratively Exhaust Her Disparate Impact Claim….19

      B. Plaintiff Also Fails to State a Cognizable Title VII Disparate Impact Claim………..23

 IV. A MORE DEFINITIVE STATEMENT IS APPROPRIATE……………………………28

CONCLUSION…………………………………………………………………………..29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizmendi v. Lawson,*
  914 F. Supp. 1157 (E.D. Pa. 1996) ........................................................................ 18

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................... 9, 26

B*aker v. Henderson,*
  150 F. Supp. 2d 17 (D.D.C. 2001) ........................................................................... 3

*Barkley v. U.S. Marshals Serv.,*
  766 F.3d 25 (D.C. Cir. 2014) ................................................................................. 17

*Bartlette v. Hyatt Regency,*
  208 F. Supp. 3d 311 (D.D.C. 2016) ....................................................................... 20

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................... 9, 24

*Brady v. Livingood,*
  360 F. Supp. 2d 94 (D.D.C. 2004) ......................................................................... 24

*Carter v. West Publishing Co.,*
  225 F.3d 1258 (11th Cir. 2000) ............................................................................. 18

*Cheeks v. Fort Meyer Constr. Corp.,*
  71 F. Supp. 3d 163 (D.D.C. 2014) ......................................................................... 28

*Council on Am. Islamic Relations v. Ballenger,*
  444 F.3d 659 (D.C. Cir. 2006) ............................................................................... 11

*Crawford v. Duke,*
  867 F.3d 103 (D.C. Cir. 2017) ............................................................................... 21

*Davis v. District of Columbia,*
  925 F.3d 1240 (D.C. Cir. 2019) ............................................................................. 23

*Dorsey v. Am. Express Co.,*
  499 F. Supp. 2d 1 (D.D.C. 2007) ........................................................................... 28

*Feldman v. CIA,*
  797 F. Supp. 2d 29 (D.D.C. 2011) ......................................................................... 28

*Gilbert v. Chertoff,*
  Civ. A. No. 05-2128 (RJL), 2006 WL 2793169 (D.D.C. Sept. 28, 2006) ........ 10, 28

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
  185 F. Supp. 2d 9 (D.D.C. 2001) ............................................................................. 8

*Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urban Dev.,*
  639 F.3d 1078 (D.C. Cir. 2011) ............................................................................. 25

*Green v. Stuyvesant,*
  505 F. Supp. 2d 176 (D.D.C. 2007) ......................................................................... 8

*Haase v. Sessions,*
  835 F.2d 902 (D.C. Cir. 1987) ................................................................................. 8

*Hilska v. Jones,*
  217 F.R.D. 16, (D.D.C. 2003) ................................................................................ 28

*Hylton v. Watt,*
  Civ. A. No. 17-2023 (RDM), 2018 WL 4374923 (D.D.C. Sept. 13, 2018) ...... 25, 27

*Irwin v. Dep't of Veterans Affairs,*
  498 U.S. 89 (1990) ............................................................................................... 14, 17

*James v. Dep't of Health & Human Servs.,*
  824 F.2d 1132 (D.C. Cir. 1987) ................................................................................. 16

*Jerome Stevens Pharms., Inc. v. FDA,*
  402 F.3d 1249 (D.C. Cir. 2005) ................................................................................... 8

*Jianqing Wu v. Special Couns., Inc.,*
  54 F. Supp. 3d 48 (D.D.C. 2014) ............................................................................... 28

*Jianqing Wu v. Special Counsel,*
  No. 14-7159, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015) ..................................... 25

*Johnson v. Gonzales,*
  479 F. Supp. 2d 55 (D.D.C. 2007) ............................................................................. 15

*Koutny v. Martin,*
  530 F. Supp. 2d 84 (D.D.C. 2007) ............................................................................... 3

*LaFavors v. Shinseki,*
  Civ. A. No. 10-1575 (RLW), 2012 WL 640878 (D.D.C. Feb. 29, 2012).................... 16

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,*
  507 U.S. 163 (1993) ..................................................................................................... 8

*Lessman v. Tenet,*
  362 F. Supp. 2d 33 (D.D.C. 2005) ............................................................................. 18

*Lewis v. City of Chicago,*
  560 U.S. 205 (2010) ................................................................................................... 24

*Majano v. United States,*
  469 F.3d 138 (D.C. Cir. 2006) ................................................................................... 11

*McCants v. Glickman,*
  180 F. Supp. 2d 35 (D.D.C. 2001) ............................................................................. 15

*McQueen v. Woodstream Corp.,*
  244 F.R.D. 26 (D.D.C. 2007) ....................................................................................... 9

*Mondy v. Sec'y of the Army,*
  845 F.2d 1051 (D.C. Cir. 1988) ........................................................................... 14, 17

*Nat'l R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002) ................................................................................................... 17

*Norman v. United States,*
  467 F.3d 773 (D.C. Cir. 2006) ................................................................................... 14

*Osborn v. Haley,*
  549 U.S. 225 (2007) ......................................................................................... 10, 11, 12

*Payne v. Salazar,*
  619 F.3d 56 (D.C. Cir. 2010) ............................................................................... 15, 20

*Platt v. Burroughs Corp.,*
  424 F. Supp. 1329 (E.D. Pa. 1976) ........................................................................... 18

*Prince v. Rice,*
  453 F. Supp. 2d 14 (D.D.C. 2006) ............................................................................. 27

*Raytheon Co. v. Hernandez,*
  540 U.S. 44 (2003) ............................................................................................... 20, 23

*Ricci v. DeStefano,*
  557 U.S. 557 (2009) ................................................................................................... 25

*Saltz v. Lehman,*
  672 F.2d 207 (D.C. Cir. 1982) ........................................................................... 16
*Segar v. Smith,*
  738 F.2d 1249 (D.C. Cir. 1984) ......................................................................... 23
*Simpkins v. Dist. of Columbia Gov't,*
  108 F.3d 366 (D.C. Cir 1997) ............................................................................ 13
*Smith v. City of Jackson,*
  544 U.S. 228 (2005) ..................................................................................... 23, 24
*Smith v. Clinton,*
  253 F. Supp. 3d 222 (D.D.C. 2017) ............................................................ 11, 13
*Smith–Haynie v. District of Columbia,*
  155 F.3d 575 (D.C. Cir. 1998) ..................................................................... 14, 15
*Steele v. Schafer,*
  535 F.3d 689 (D.C. Cir. 2008) ..................................................................... 15, 20
*Stewart v. Ashcroft,*
  352 F.3d 422 (D.C. Cir. 2003) ........................................................................... 16
*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002) ............................................................................................. 9
*Tolton v. Jones Day,*
  Civ. A. No. 19-0945 (RDM), 2020 WL 2542129 (D.D.C. May 19, 2020) ............. 25
*Townsend v. United States,*
  236 F. Supp. 3d 280 (D.D.C. 2017) .................................................................. 27
*United States v. Kwai Fun Wong,*
  575 U.S. 402 (2015) ........................................................................................... 13
*Vasser v. McDonald,*
  228 F. Supp. 3d 1 (D.D.C. 2016) ............................................................... passim
*Wards Cove Packing Co. v. Atonio,*
  490 U.S. 642 (1989) ..................................................................................... 23, 26
*Washington v. WMATA,*
  160 F.3d 750 (D.C. Cir. 1998) ........................................................................... 17
*Watson v. Fort Worth Bank & Trust,*
  487 U.S. 977 (1988) ..................................................................................... 24, 26
*Wilson v. Peña,*
  79 F.3d 154 (D.C. Cir. 1996) ............................................................................. 21
*Wuterich v. Murtha,*
  562 F.3d 375 (D.C. Cir. 2009) ................................................................. 10, 11, 12
*Young v. Covington & Burling LLP,*
  736 F. Supp. 2d 151 (D.D.C. 2010) .................................................................. 24

**Statutes**

28 U.S.C. § 2401(b) ...................................................................................... 12, 13
28 U.S.C. § 2675(a .............................................................................................. 12
28 U.S.C. § 2679 ................................................................................................. 10
28 U.S.C. § 2679(d)(1) ........................................................................................ 11
28 U.S.C. § 2679(d)(1)-(2) .................................................................................. 11
28 U.S.C. § 2680 ................................................................................................. 12

Pub. L. No. 100-694 ........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(e) ................................................................................................. 9, 28

Fed. R. Civ. P. 12(b)(1) .................................................................................................. 8

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 9

**Regulations**

29 C.F.R. § 1614.105(a)(1) ...................................................................................... 15, 19

By and through undersigned counsel, Defendants the United States of America ("United States") and Merrick Garland, in his official capacity as Attorney General (collectively, the "Federal Defendants"), respectfully move for partial dismissal of Plaintiff Jane Doe's Third Amended Complaint in this employment discrimination and tort matter pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).  The Federal Defendants also request a more definite statement as to the remaining allegations pursuant to Rule 12(e).

For the reasons stated below, the United States should be entirely dismissed from Plaintiff's Third Amended Complaint because the Court lacks jurisdiction to hear Plaintiff's tort claims against the United States as Plaintiff has failed to administratively exhaust these claims as required by the Federal Tort Claims Act ("FTCA").  Moreover, even if the Court had jurisdiction to hear Plaintiff's claims against the United States, they are also all time barred.

Finally, the Court should partially dismiss Merrick Garland, in his official capacity as Attorney General, from the Third Amended Complaint.  Plaintiff brings three claims of employment discrimination pursuant to the Civil Rights Act of 1964 ("Title VII") against the Attorney General.  The first two are disparate treatment claims—Plaintiff alleges that she was discriminated against on the basis of her sex, race, national origin, and religion and was retaliated against for participation in the EEO process.  To the extent Plaintiff bases these claims on events that occurred before January 26, 2018, (including alleged ███████████ by Defendant Smith from 2012-2015), however, such claims are untimely and should be dismissed for failure to state a claim.

Plaintiff's third claim against the Attorney General is a disparate impact claim—Plaintiff alleges that the Federal Bureau of Investigation ("FBI") has a "pattern and practice of failing to discipline male special agents and ensure that women in the FBI have a harassment and

discriminatory free workplace" and that these actions have a disparate impact on women in the FBI. This claim is subject to dismissal in its entirety both because Plaintiff failed to timely exhaust a disparate impact claim and because her Amended Complaint fails to state a disparate impact claim upon which relief may be granted.

The Federal Defendants respectfully request that the Court order Plaintiff to file a more definite statement as to any claims that may remain once the Federal Defendants' partial motion to dismiss has been resolved.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Employment with the FBI

According to Plaintiff's Third Amended Complaint, Plaintiff began her employment with the FBI in ▮▮▮▮▮▮. ECF No. 67 ("3d Am. Compl.") ¶ 43. Approximately seven years later, on ▮▮▮▮▮▮▮▮, Plaintiff was terminated from the FBI after the Office of Inspector General concluded that she lacked candor under oath. *Id*. ¶ 79. Plaintiff appealed her termination to the FBI's Disciplinary Review Board, which upheld the termination on January 21, 2020. *Id*. ¶ 86.

### B.    Plaintiff's May 2018 Administrative EEO Complaint

Plaintiff first contacted an EEO counselor regarding the facts underlying her Title VII claims at issue in this litigation on March 12, 2018.[1]  *See* Ex. A (June 5, 2018, Report of Counseling) at 3.[2]  Plaintiff subsequently filed a formal administrative EEO Complaint on May

---

[1]      Plaintiff alleges that she initiated earlier "EEO complaints from ▮▮▮▮▮▮▮." 3d Am. Compl. ¶ 49. While Plaintiff does not clearly allege the full subject-matter of these complaints or the dates on which she contacted an EEO counselor, she admits that she "abandoned" these earlier EEO complaints. *Id*.

[2]      The Court may consider Exhibits A-G and I-J, which are administrative EEO records underlying Plaintiff's Title VII claims, without converting the Federal Defendants' Motion to Dismiss into a motion for summary judgment. *See Vasser v. McDonald*, 228 F. Supp. 3d 1, 9-10 (D.D.C. 2016). "In the context of exhaustion, courts are willing to rely upon administrative orders

31, 2018.  *See* Ex. B (May 13, 2018, EEO Complaint) at 1.  One of the issues Plaintiff identified

in her formal EEO complaint was the FBI's January 2018 decision to suspend her based on a

proposed decision by the Office of Professional Responsibility.  *See id*. at 4.  Plaintiff also

complained that she had been subjected to a hostile work environment harassment, to include

██████████████ and reprisal based on events that occurred between ████████████. *See id.*

On November 28, 2018, the FBI's EEO office accepted two claims from Plaintiff's May

2018 formal Complaint for investigation:

> Whether complainant was discriminated against based on race ████, national
> origin ██████████████ sex (female), ██████████████ and reprisal for EEO
> activity when, allegedly the following occurred:
>
> (1)  On January 26, 2018, she received a letter proposing her dismissal from FBI
>       employment; and
>
> (2)  On May 14, 2018, she was placed on indefinite suspension without pay.

*See* Ex. C (Nov. 2018 Letter) at 2.  The FBI's EEO office did not, however, accept older claims

such as alleged ██████████████████████, as these alleged discrete acts were not

raised within 45 days of their occurrence.  *See id.*

---

and administrative complaints without converting the motion into one for summary judgment
when the documents are referred to in the complaint are integral to the plaintiff's exhaustion of
administrative remedies, and are public records subject to judicial notice." *Id*. (internal citations
and quotations omitted).  "[C]ourts may take judicial notice of matters of a general public
nature . . . without converting the motion to dismiss into one for summary judgment." *Koutny v.
Martin*, 530 F. Supp. 2d 84, 89 (D.D.C. 2007) (quoting *Baker v. Henderson*, 150 F. Supp. 2d 17,
19 n.1 (D.D.C. 2001)).  "If courts could not take judicial notice of such public documents, plaintiffs
who obviously had not complied with the administrative-exhaustion process could survive motions
to dismiss purely by failing to attach their administrative complaint." *Vasser*, 228 F. Supp. 3d at
10 (citations omitted).  Here, Plaintiff's EEO activity and the agency's administrative records of
this EEO activity are incorporated by reference into Plaintiff's Third Amended Complaint.  *See*
3d Am. Compl. ¶ 4.

Plaintiff requested a hearing before the EEOC, but Plaintiff filed the instant Complaint in District Court before the EEOC started processing the case.   Accordingly, there was no administrative decision on the merits with respect to Plaintiff's May 2018 EEO Complaint.

### C.   Plaintiff's April 2020 Administrative EEO Complaint

On March 4, 2020, Plaintiff first contacted an EEO counselor regarding the Disciplinary Review Board's January 22, 2020, decision to uphold her termination.  *See* Ex. D (May 7, 2020, Report of Counseling) at 2-3.  Plaintiff subsequently filed a formal administrative EEO Complaint on April 15, 2020, alleging discrimination and retaliation in connection with "the decision from DRB to deny my appeal."  Ex. E (April 2020 EEO Complaint) at 1-2.

In a June 4, 2020, Amended EEO Complaint, Plaintiff asserted for the first time that "[t]his amended complaint is based upon both disparate treatment *and impact* theories."  *See* Ex. G (June 4, 2020, Am. EEO Compl.) at 2 (emphasis added).  With respect to the newly articulated disparate impact theory, Plaintiff stated:



> "[T]here is a disparity between OPR and DRB decisions involving ▉▉▉▉▉▉ between employees that treats male employees more favorably than the female ones. Moreover, there is a pattern of permitting senior FBI officials who have engaged in ▉▉▉▉▉▉ to retire before an OPR investigation is commenced. Moreover, there is a pattern of DRB decisions that lessen the penalties for ▉▉▉▉ ▉▉▉▉ by male employees, allows males [*sic*] senior FBI officials who have engaged in ▉▉▉▉▉▉ to retire before an OPR investigation is commenced, and fails to take remedial action to prevent further incidents in the workplace."

Ex. G. (June 4, 2020, Am. EEO Compl.) at 2.

On June 11, 2020, the FBI's EEO office accepted for investigation the following claim from Plaintiff's April 2020 formal EEO Complaint, as Amended on June 4, 2020:

> Whether complainant was discriminated against based on race ▉▉▉▉, religion ▉▉▉▉▉, sex (female), national origin ▉▉▉▉▉▉▉▉ parental status, and reprisal for prior EEO activity when on January 22, 2020, she learned that the decision to remove her from the rolls of the FBI had been upheld by the Disciplinary Review Board (DRB).

*See* Ex. F (June 11, 2020 Letter) at 1.  FBI's EEO office did not accept for investigation a disparate impact claim.  *Id.*

Plaintiff and her counsel were advised in the FBI's June 11, 2020, letter that if Plaintiff believed that "either the bases or the issue described in her EEO complaint have not been properly identified" counsel should notify the FBI within 15 calendar days after receipt of the letter, specifying the reasons for their belief.  *Id.* at 2.  Although Plaintiff objected to the fact that the FBI did not accept for investigation her untimely ███████████ claim, *see* Ex. I (July 1, 2020 Letter), Plaintiff never objected to the FBI's articulation of her charge as not including a disparate impact claim.[3]  *Id.*  The FBI's investigation thus did not include an investigation of any disparate impact theory or claim.

The FBI's EEO Office was still working on the Report of Investigation for Plaintiff's April 2020 EEO Complaint (as amended in June 2020) when Plaintiff filed the instant Complaint in District Court.  Accordingly, there was no administrative decision on the merits with respect to Plaintiff's formal EEO Complaint.

### D.    District Court Proceedings

The Federal Defendants have previously set forth the full procedural background of this case in their first two motions to dismiss this matter.  Accordingly, the Federal Defendants do not recite this information in full again here, but rather incorporate by reference the procedural history detailed in their first two dispositive motions.  *See* ECF Nos. 27-1 (public redacted version) at 10-

---

[3]    The FBI responded to Plaintiff's July 1, 2020, letter on July 8, 2020, to explain that the issue accepted for investigation would remain "as set forth in the June 12, 2020, acceptance letter," because, among other reasons, the alleged ███████████ claim was previously dismissed in connection with a previous EEO complaint as untimely even at that earlier date.  Ex. J (July 8, 2020 Letter).

12;[4] 43-1 (public redacted version) at 11-12.  The Federal Defendants will, however, briefly summarize the pertinent procedural developments that have occurred since the filing of the Federal Defendants' second dispositive motion.

On December 1, 2021, the Court entered an order granting the Federal Defendants' and Individual Defendant Smith's motions to dismiss.  ECF No. 61.  The Court held that Plaintiff's Complaint was "lacking in factual specificity" and that her briefing was "woefully inadequate," but nevertheless dismissed without prejudice to Plaintiff filing a Third Amended Complaint on or before January 3, 2022.  *Id*. at 1, 4.

On January 3, 2022, Plaintiff filed her Third Amended Complaint in this matter.  ECF No. 65 (Sealed); ECF No. 67 (Public).  The Third Amended Complaint names as Defendants the Attorney General, in his official capacity, and former █████Smith, in his individual capacity.  3d Am. Compl. at 1.  Plaintiff's Third Amended Complaint includes 8 counts:  three claims for employment discrimination under Title VII (Counts 1-3); two *Bivens* claims for constitutional torts (Counts 4 and 5); and three state-law based tort claims (Counts 6-8).  3d Am. Compl. at 39-46.

Against the Attorney General, Plaintiff brings only the three Title VII claims (Counts 1-3). 3d Am. Compl. ¶¶ 1, 6, 140-53.  With respect to Defendant Smith, Plaintiff brings her *Bivens* claims (Counts 4-5) and her state-law tort claims (Counts 6-8) against him in his individual capacity only.  *See* 3d Am. Compl. ¶¶ 1, 154-83.

On January 10, 2022, the Attorney General's designee certified that at the time of certain specified conduct alleged in Plaintiff's Third Amended Complaint, Defendant Smith was acting within the scope of his employment.  ECF No. 66-1.  Specifically, Agent Smith was certified as

---

[4]     All citations to documents filed on the Court's docket refer to the pagination of the ECF-generated headings, not the pagination (if any) at the bottom center of the pages.

acting within the scope of his employment with the FBI with regard to the conduct described in, and alleged injuries or damages caused by, the following:

> • The allegations in Paragraphs 52 and 62 of the Third Amended Complaint, which generally pertain to Defendant Smith calling Plaintiff into meetings and requiring Plaintiff to attend certain meetings;
>
> • The allegations in Paragraph 61 of the Third Amended Complaint, which generally pertain to Defendant Smith attending an event with Plaintiff in █████████ and traveling in the same vehicle to and from the event;
>
> • The allegations in Paragraphs 56, 69, 70, 72, 74, 75, 78, 86, 95, 97, 101, 119, and 130 of the Third Amended Complaint, to the extent they pertain to Defendant Smith reporting Plaintiff ████████████ to the Office of Inspector General, and the Office of Inspector General's investigation of the same; and
>
> • The allegations in Paragraphs 61 and 127 of the Third Amended Complaint to the extent they pertain to Defendant Smith wearing his FBI-issued firearm.

*Id*.

On January 11, 2022, the United States filed an Amended Notice of Partial Substitution pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 (also known as the "Westfall Act") §§ 5, 6, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified at 28 U.S.C. § 2679), providing notice that the United States was thereby substituted for Defendant Smith with respect to Plaintiff's state law causes of actions (Counts 6-8) to the extent such causes of action are supported by the allegations for which Acting Civil Chief Hudak has certified that Defendant Smith was acting within the scope of his employment.  ECF No. 66.  Accordingly, on January 12, 2022, the Court Ordered that the United States was the sole Defendant with respect to the state law claims set forth in Counts Six, Seven, and Eight of the Third Amended Complaint, to the extent those claims are supported by the conduct certified by the Attorney General's designee. ECF No. 68.

The Federal Defendants now timely move to dismiss the United States from the Third Amended Complaint entirely, and to partially dismiss the claims against Attorney General

Garland.  The Federal Defendants respectfully request that the Court order Plaintiff to file a more definite statement as to any claims remaining against Attorney General Garland once the Court has resolved the Federal Defendants' Motion for Partial Dismissal.

## LEGAL STANDARDS

### A.    Rule 12(b)(1) Lack of Subject Matter Jurisdiction

"On a [Rule] 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his [or her] claims." *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007) (citations omitted).  Because a motion for dismissal under "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citations omitted), the Rule requires dismissal of a complaint if the Court lacks subject-matter jurisdiction over the dispute. *See* Fed R. Civ. P. 12(b)(1).

The Court must accept as true all of the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1). *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, since the plaintiff has the burden of establishing the Court's jurisdiction, the "plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (citation and internal quotation marks omitted).  Moreover, the Court is not limited to the allegations set forth in the complaint, and "may consider materials outside [of] the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted).

### B.      Rule 12(b)(6) Failure to State a Claim

A Rule 12(b)(6) motion to dismiss assesses the sufficiency of a complaint, testing whether the plaintiff has pled sufficient facts to state a claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Twombly*, 550 U.S. at 570.  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555.).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### C.      Rule 12(e) More Definite Statement

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002).  Rule 12(e) provides defendants with a remedy for inadequate pleadings that fail to meet the minimum pleading standard set forth in Rule 8(a).  *McQueen v. Woodstream Corp.,* 244 F.R.D. 26, 34 (D.D.C. 2007).

Motions for a more definite statement are appropriate where the complaint "lacks the required specificity to enable [the] defendant to understand the precise nature of the claims against [it]." *Gilbert v. Chertoff,* Civ. A. No. 05-2128 (RJL), 2006 WL 2793169, at *2 (D.D.C. Sept. 28, 2006).

## ARGUMENT

## I.   ALL CLAIMS AGAINST THE UNITED STATES SHOULD BE DISMISSED

Because Defendant Smith was acting within the scope of his employment as an employee of the FBI with respect to the conduct certified by the Attorney General's designee, Plaintiff's state law tort claims (to the extent they are supported by those particular allegations) are construed as claims against the United States.  The Court should dismiss Plaintiff's tort claims against the United States for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff failed to exhaust her administrative remedies as required by the FTCA.  Additionally, even were the Court to have jurisdiction over Plaintiff's FTCA claims, these claims are now time-barred.  The Complaint should therefore also be dismissed under Rule 12(b)(6).

### A.   Pursuant to the Westfall Act, the United States Has Been Substituted as Defendant for Plaintiff's Tort Claims 6-8 to the Extent Such Claims are Supported by Defendant Smith's Certified Conduct.

The Westfall Act, 28 U.S.C. § 2679, "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007).  The purpose of the Westfall Act "is to relieve covered employees from the cost and effort of defending [a] lawsuit, and to place those burdens on the Government's shoulders."  *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009) (quoting *Osborn*, 549 U.S. at 252).

"When a federal employee is sued for wrongful or negligent conduct," the Attorney General or his delegate may certify that the employee "was acting within the scope of his office or

10

employment at the time of the incident out of which the claim arose."  *Osborn*, 549 U.S. at 229–30 (quoting 28 U.S.C. § 2679(d)(1)–(2)).  "Upon the Attorney General's certification, the employee is dismissed from the action, and the United States is substituted as the defendant in place of the employee."  *Id.* at 230.

"Thereafter, the suit is governed by the [FTCA] and is subject to all of the FTCA's exceptions for actions in which the Government has not waived sovereign immunity."  *Wuterich*, 562 F.3d at 380 (citing *Osborn*, 549 U.S. at 230).  Unless one of the exceptions to the waiver of sovereign immunity set forth in the FTCA applies, the Westfall Act certification "converts the tort suit into a FTCA action over which the federal court lacks subject matter jurisdiction and has the effect of altogether barring plaintiff's case."  *Id.*; *see also Majano v. United States*, 469 F.3d 138, 139 (D.C. Cir. 2006); *Smith v. Clinton*, 253 F. Supp. 3d 222, 234 (D.D.C. 2017), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018).

Here, as discussed above, the Attorney General's designee has certified that Defendant Smith was acting within the scope of his employment as an employee of the FBI with respect to certain conduct alleged in Plaintiff's Third Amended Complaint.  *See* ECF No. 66-1.   This "certification 'constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment,'" *Smith*, 253 F. Supp at 234 (citing *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam)).

Under the FTCA, to the extent Plaintiff's claims are supported by the certified conduct, the lawsuit should be "deemed an action against the United States," and the United States should be substituted as defendant in Defendant Smith's place.  *See* 28 U.S.C. § 2679(d)(1)-(2)); *see also Osborn*, 549 U.S. at 230.

Plaintiff purports to support each of her three state-law based tort claims (Counts 6-8) with the facts alleged in the same 65 paragraphs of the Third Amended Complaint—Paragraphs 1-3, 5-42, 50, and 117-139.  *See* 3d Am. Compl. ¶¶ 168, 173, 177.  As such, each of these three tort claims are now brought against the United States, to the extent Plaintiff alleges that they are supported by Defendant Smith's certified conduct, which includes conduct alleged in Paragraphs 119 and 130 (to the extent the allegations pertain to Defendant Smith Reporting Plaintiff or ▮▮▮▮▮▮ to the Office of Inspector General and the Office of Inspector General's investigation of the same) and Paragraph 127 (to the extent the allegations pertain to Defendant Smith wearing his FBI-issued firearm).  ECF No. 66-1 at 2.

**B.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Tort Claims Against the United States Due to Plaintiff's Failure to Exhaust Administrative Remedies.**

After a Westfall Act substitution in a tort case, "the suit is governed by the [FTCA] and is subject to all of the FTCA's exceptions for actions in which the [g]overnment has not waived sovereign immunity."  *Wuterich*, 562 F.3d at 380 (citing *Osborn*, 549 U.S. at 230).  The FTCA bars plaintiffs from bringing certain claims against the government, *see* 28 U.S.C. § 2680, and it sets requirements for administrative exhaustion of claims.  28 U.S.C. § 2401(b).  Here, Plaintiff failed to exhaust her administrative remedies and the government has not waived its sovereign immunity.  Therefore, the Court lacks subject matter jurisdiction over Plaintiff's tort claims against the United States and the United States should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

A plaintiff may not institute an FTCA action against the United States unless: (1) the plaintiff has first "presented the claim to the appropriate Federal agency" whose employees are responsible for the plaintiff's alleged injury, and (2) that agency has "finally denied" the plaintiff's claim.  28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United

States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.")  The FTCA's exhaustion requirement is jurisdictional and may not be waived.  *Smith*, 253 F. Supp. at 238 (citing *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir 1997)).

Here, Plaintiff has never presented the FBI with an administrative claim for any injury stemming from the allegations in her Third Amended Complaint.  *See* Ex. H (Declaration of Deborah A. Crum) (confirming that a diligent search of FBI's records reflected no administrative tort claim from Plaintiff as of February 16, 2022).  As such, she has never exhausted her administrative remedies.  The Court therefore lacks subject matter jurisdiction over Plaintiff's claims against the United States and the Court should therefore dismiss the United States from the Complaint.

**C.**     **Plaintiff Fails to State a Claim Upon Which Relief May be Granted With Respect to her FTCA Claims Against the United States**

Even if the Court were to find that it has subject matter jurisdiction over Plaintiff's FTCA claims against the United States, these claims are time-barred.  The claims are therefore also subject to dismissal pursuant to Rule 12(b)(6).

Title 28 U.S.C. § 2401(b) provides: "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." While this statute of limitations is not jurisdictional, *see United States v. Kwai Fun Wong*, 575 U.S.

402, 405 (2015), courts will equitably toll the limitations period "only sparingly" and will generally refuse to do so "where a plaintiff 'failed to exercise due diligence in preserving [her] legal rights' or showed only 'a garden variety claim of excusable neglect.'"  *Norman v. United States*, 467 F.3d 773, 775–76 (D.C. Cir. 2006) (citing  *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)); *see also Smith–Haynie v. District of Columbia,* 155 F.3d 575, 580 (D.C. Cir. 1998) (equitable tolling available "only in extraordinary and carefully circumscribed circumstances," such as where "despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of her claim.") (quoting *Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988)).

Here, all of Plaintiffs' claims against the United States accrued well over two years ago. Construing the allegations in the light most favorable to Plaintiff, Plaintiff's claims accrued somewhere between four to ten years ago.  While Plaintiff's Complaint does not clearly allege when she became aware of certain conduct supporting her various tort claims—for example, her referral to FBI's Inspection Division and her subsequent investigation by the Office of Inspector General—she was certainly aware of this referral by, at the very latest, May 2018 when she referenced this "contrived malicious retaliatory and discriminatory investigation" in her formal EEO Complaint.  *See* Ex. B at 4.  For the remainder of the conduct alleged against the United States, Plaintiff would have been aware of the fact that ███ Smith was wearing his FBI-issued firearm when the alleged conduct occurred in the ██████ timeframe.  *See* 3d Am. Compl. ¶ 127 (referencing Defendant Smith's wearing of an FBI-issued firearm, which would necessarily have to have occurred prior to his retirement, which Plaintiff alleges occurred in ████████ (*see* 3d Am. Compl. ¶ 80)).

14

Plaintiff has long since passed the FTCA's two-year statute of limitations and has provided no allegations to support equitable tolling of the limitations period that would qualify for the "extraordinary and carefully circumscribed circumstances" required for such equitable relief in this Circuit. *Smith–Haynie*, 155 F.3d at 580 (equitable tolling available "only in extraordinary and carefully circumscribed circumstances," such as where "despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of her claim."). Plaintiff's FTCA claims against the United States are thus time-barred and subject to dismissal for failure to state a claim upon which relief may be granted.

## II.   PLAINTIFF'S TITLE VII DISPARATE TREATMENT CLAIMS AGAINST ATTORNEY GENERAL GARLAND ARISING BEFORE JANUARY 26, 2018, SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Plaintiff failed to contact an EEO counselor within 45 days of the alleged ███ ███ by Defendant Smith and any other alleged adverse actions occurring before January 26, 2018. If a federal employee believes that he or she has been subjected to discrimination or retaliation then he or she is required to exhaust administrative remedies, which includes contacting an EEO counselor within 45 days. *See* 29 C.F.R. § 1614.105(a)(1) (requiring that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory[.]"). Failure to exhaust administrative remedies will bar a plaintiff from pursuing a federal court case. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (stating that "a court may not consider a discrimination claim that has not been exhausted").

"The plaintiff's time for [contacting an EEO counselor] starts to run when the plaintiff has a reasonable suspicion that [she] has been the victim of discrimination." *Johnson v. Gonzales*, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (citing *McCants v. Glickman*, 180 F. Supp. 2d 35, 40 (D.D.C.

2001)); *see also LaFavors v. Shinseki*, Civ. A. No. 10-1575 (RLW), 2012 WL 640878, at *1 (D.D.C. Feb. 29, 2012) (stating that if there is any doubt about when "the matter alleged to be discriminatory" occurred, the 45-day period begins to run when the plaintiff "knew, or should have known, about the alleged discriminatory action") (citing *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003)).  Here, Plaintiff knew as early as 2013 that she was allegedly ███████ by Defendant Smith. *See, e.g.*, 3d Am. Compl. ¶ 61 (alleged ███████ in █████ ), ¶ 62 (alleged false imprisonment by Defendant Smith in █████ ), ¶ 65 (alleged ████ ███████████ by Defendant Smith in █████ ), ¶ 68 (alleged ████ by Defendant Smith in █████ ), ¶ 69 (stating █████████████ ).  Plaintiff failed to contact an EEO counselor within 45 days of these alleged incidents of ████████ .  Plaintiff did not contact an EEO counselor until approximately five years later on March 12, 2018, according to her 2018 formal EEO Complaint and the FBI's Report of Counseling.[5]  *See* Ex. B at 2, Ex. A at 2-3.[6]  Therefore, the Plaintiff's Title VII claims regarding █████████ by Defendant Smith should be dismissed because they are untimely.

The 45-day requirement to contact a counselor is subject to waiver, estoppel, and equitable tolling.  *See Saltz v. Lehman*, 672 F.2d 207, 208 (D.C. Cir. 1982); *see also James v. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1138 (D.C. Cir. 1987).  Courts in the D.C. Circuit are generally reticent to excuse a plaintiff's failure to exhaust her administrative remedies under Title VII, as "[t]he obligation to initiate one's claim in the government agency charged with discrimination is part and parcel of the congressional design to vest in the federal agencies and officials engaged in

---

[5]      Therefore, only decisions on January 26, 2018, or later, are covered by the 45-day period.

[6]      Plaintiff's Third Amended Complaint alleges that she had made prior EEO complaints, including one alleging defacement of her picture in 2011. 3d Am. Compl. ¶¶ 35, 46-49.  Therefore, she was aware of the process for filing an EEO claim and contacting a counselor.

hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment." *Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 34 (D.C. Cir. 2014) (quotation marks omitted); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) ("In the context of a request to alter the timely filing requirements of Title VII, this Court has stated that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law") (quotation marks omitted).

Courts have excused a plaintiff's failure to exhaust in limited circumstances. For instance, exhaustion has been excused where "a defendant engaged in affirmative misconduct." *Washington v. WMATA*, 160 F.3d 750, 752–53 (D.C. Cir. 1998) (quotation marks omitted). But the power to toll the statute of limitations is to be "exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). Thus, a plaintiff will not be afforded extra time to file an administrative claim without exercising due diligence, and any excuse presented by a plaintiff must be more than a "garden variety claim of excusable neglect." *Irwin*, 498 U.S. at 96.

Here, Plaintiff cannot meet the standard for equitable tolling. According to the EEO counselor, Plaintiff was asked to explain why she did not contact an EEO counselor within 45 days of the alleged ███████████. Ex. B at 3. The counselor's report indicates Plaintiff "stated she never reported the incidents to anyone as she wanted to protect former [████████████ Smith]." *Id*. The Federal Defendants are aware of no precedent in this Circuit holding that a desire to protect a person accused of ███████████ is a sufficient reason to delay contacting an EEO counselor.

In the Complaint, Plaintiff now alleges she did not report the alleged ███████████ because she was fearful of retaliation by Defendant Smith. *See* 3d Am. Compl. ¶¶ 34-39. This

also is not a sufficient reason to delay contacting an EEO counselor according to precedents from Courts within this Circuit and elsewhere. In *Lessman v. Tenet*, 362 F. Supp. 2d 33 (D.D.C. 2005), the Court found a plaintiff's EEO claim was untimely because she did not contact a counselor within 45 days of the events at issue. The plaintiff in that case also claimed that she did not contact a counselor because she feared retaliation. *See id*. The Court stated that tolling the statute of limitations "should be exercised only in extraordinary and carefully-circumscribed instances such as where the federal agency itself has engaged in affirmative misconduct or given a claimant erroneous information." *Id*. at 36. Here, Plaintiff does not allege that the FBI, for example, told her the 45-day period would not apply or that it would excuse her if she missed the 45-day deadline to assert a claim. *See generally*, 3d Am. Compl. In *Carter v. West Publishing Co.*, 225 F.3d 1258 (11th Cir. 2000), the Court of Appeals for the Eleventh Circuit rejected an equitable tolling argument based on fear of retaliation similar to the argument raised here by Plaintiff. The Eleventh Circuit held:

> Plaintiffs' purported fear of retaliation, however, is not a ground for equitable tolling. *See e.g., Arizmendi v. Lawson,* 914 F. Supp. 1157, 1162 (E.D. Pa. 1996); *Caldwell v. National Ass'n of Home Builders,* 598 F. Supp. 371, 377 (N.D. Ind. 1984); *Platt v. Burroughs Corp.,* 424 F. Supp. 1329, 1333 (E.D. Pa. 1976). Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation. This court cannot permit such circumvention of Title VII's express filing limitations. Furthermore, Title VII specifically protects employees against retaliation for filing a discrimination complaint.

*Id*. at 1266. Here, Plaintiff cannot meet the applicable standard to establish equitable tolling to excuse her untimely filing. The Court should therefore dismiss Plaintiff's Title VII disparate treatment claims to the extent they are based on the untimely and unexhausted allegations of ███ ███████ or other adverse actions occurring prior to January 26, 2018.

**III.   PLAINTIFF'S TITLE VII DISPARATE IMPACT CLAIM AGAINST ATTORNEY GENERAL GARLAND SHOULD BE DISMISSED FOR FAILURE TO TIMELY ADMINISTRATIVELY EXHAUST AND FAILURE TO STATE A COGNIZABLE CLAIM**

The third count of Plaintiff's Third Amended Complaint asserts a disparate impact claim under Title VII of the Civil Rights Act of 1964.  3d Am. Compl. ¶¶ 149-53.  Because Plaintiff failed to timely exhaust administrative remedies with respect to a disparate impact claim, this claim should be dismissed in its entirety.  Moreover, even if Plaintiff had timely exhausted this claim, she fails to plausibly identify a facially neutral policy that causes a disparate impact on the basis of a protected class, and thus her claim is also subject to dismissal for failure to state a claim upon which relief may be granted.

**A.      Plaintiff Failed to Timely Administratively Exhaust Her Disparate Impact Claim**

Plaintiff's Third Amended Complaint articulates her disparate impact claim as follows: "[t]he FBI has a pattern and practice of failing to discipline male special agents and ensure that women in the FBI have a harassment and discriminatory free workplace.  Instead, the FBI uses its facially neutral disciplinary process in a manner that women are not equally protected from harassment as male agents are."  3d Am. Compl. ¶ 150.  Plaintiff failed to administratively exhaust this claim for multiple reasons.

*First*, to the extent Plaintiff now claims that the facially neutral employment practice at issue in her disparate impact claim is the FBI's "disciplinary process," Plaintiff failed to timely raise her disparate impact claim.  Plaintiff failed to contact an EEO counselor within 45 days of the final step in her own disciplinary process—the DRB's January 22, 2020, decision to uphold her termination.  As discussed *supra*, if a federal employee believes that she has been subjected to discrimination or retaliation then he or she is required to contact an EEO counselor within 45 days.  *See* 29 C.F.R. § 1614.105(a)(1) (requiring that "[a]n aggrieved person must initiate contact with a

Counselor within 45 days of the date of the matter alleged to be discriminatory[.]").  Failure to exhaust administrative remedies will bar a plaintiff from pursuing a federal court case.  *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (stating that "a court may not consider a discrimination claim that has not been exhausted").  Here, Plaintiff raised a disparate impact claim for the first time in a June 4, 2020, Amended Complaint, Ex. G. at 2, nearly three months after her March 7, 2020, deadline to do so.

To the extent Plaintiff may claim that her disparate impact claim is timely because it is "like or reasonably related" to her timely exhausted disparate treatment claim, she would be incorrect.  The disparate treatment claim Plaintiff alleged in her April 2020 EEO complaint, as accepted for investigation by the FBI, alleged that the FBI treated her worse than others because of her protected status.  Exs. E, F.  Plaintiff's timely EEO charge from April 2020 did not allege that the FBI maintained facially neutral policies that disproportionately impacted employees based on protected status.  *Id*.  Disparate treatment theory and disparate impact theory are analytically distinct and involve different elements of proof.  The Supreme Court has disapproved attempts to conflate the two theories.  *See Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).  Therefore, as regards her disparate impact claim, it is not like or reasonably related to her disparate treatment claim, and Plaintiff has not exhausted her administrative remedies.  The Court should thus dismiss this claim.  *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 324 (D.D.C. 2016) (dismissing disparate impact claims as unexhausted because they were not like or reasonably related to the disparate treatment claims in the EEO charge).

*Second*, even if the Court considered Plaintiff to have timely raised her disparate impact claim in her June 2020 Amended EEO Complaint, she still failed to administratively exhaust this claim because her invocation of "disparate impact theory" was so vague that it failed to put the

FBI on notice of her claim.  "[T]he central question is whether the employee's complaint contained sufficient  information  to put the agency on notice of  the claim and  to  enable  the agency to investigate it."  *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017) (internal quotations omitted); *see also Wilson v. Peña*, 79 F.3d 154, 164 (D.C. Cir. 1996) (suit will be "barred for failure to exhaust administrative remedies" when the plaintiff "fail[s] to provide sufficient information to enable the agency to investigate the claim").  The FBI could not appropriately investigate Plaintiff's disparate impact claim, and therefore did not accept the claim for investigation, because she neither identified a facially neutral policy nor did she explain the alleged disparate impact this policy had on a protected class.  Rather, her Amended EEO Complaint simply asserted in a conclusory manner that it was "based upon both disparate treatment and impact theories" and then made a series of assertions, none of which properly articulated a disparate impact claim.  Ex. G at 2.  It is impossible to tell from the following passage in Plaintiff's Amended EEO Complaint what, exactly, her theory of disparate impact is:

> [T]here is a disparity between OPR and DRB decisions involving ▆▆▆▆▆ between employees that treats male employees more favorably than the female ones. Moreover, there is a pattern of permitting senior FBI officials who have engaged in ▆▆▆▆▆ to retire before an OPR investigation is commenced. Moreover, there is a pattern of DRB decisions that lessen the penalties for ▆▆▆ ▆▆▆ by male employees, allows males senior FBI officials who have engaged in ▆▆▆▆ to retire before an OPR investigation is commenced, and fails to take remedial action to prevent further incidents in the workplace.

*Id*.  Because the FBI could not investigate a disparate impact claim from this vague passage in Plaintiff's Amended EEO Complaint, the FBI did not accept a disparate impact claim for investigation, and Plaintiff did not object to this omission.  Having not exhausted this claim, Plaintiff should not be permitted to resuscitate it in this Third Amended District Court Complaint.

    *Third*, and finally, even assuming that Plaintiff timely and clearly put the FBI on notice of a disparate impact claim in her June 2020 Amended Complaint, the language of her current District

Court complaint differs to such a degree from that of her Amended EEO Complaint that it cannot be fairly characterized as the same disparate impact claim. Consider the dramatically different claims articulated in the Amended EEO Complaint and current iteration of Plaintiff's District Court Complaint:

| Amended EEO Complaint Allegation | Third Amended District Court Complaint |
| --- | --- |
| [T]here is a disparity between OPR and DRB decisions involving ███████ between employees that treats male employees more favorably than the female ones. Moreover, there is a pattern of permitting senior FBI officials who have engaged in ███ ██████ to retire before an OPR investigation is commenced. Moreover, there is a pattern of DRB decisions that lessen the penalties for ████████ by male employees, allows males senior FBI officials who have engaged in ███████ to retire before an OPR investigation is commenced, and fails to take remedial action to prevent further incidents in the workplace. Ex. G at 2. | The FBI has a pattern and practice of failing to discipline male special agents and ensure that women in the FBI have a harassment and discriminatory free workplace. Instead, the FBI uses its facially neutral disciplinary process in a manner that women are not equally protected from harassment as male agents are. 3d Am. Compl. ¶ 150. |

The differences are numerous. For example, the EEO Complaint appears to allege that men receive better OPR and DRB decisions than do women, but does not identify any facially neutral policy allegedly leading to this outcome. It also appears to allege that male FBI agents accused of ████ ████████ receive lesser penalties than do female FBI agents accused of the same, and that senior male FBI agents are permitted to retire before investigations are completed, whereas, senior women agents accused of the same are not. The Third Amended District Court Complaint, however, does not pursue any of these theories. The District Court Complaint identifies for the first time a facially neutral policy (the FBI's "disciplinary process") that it is challenging, something never identified in the EEO allegations. The theory of impact or harm has also shifted.

Gone is the idea that men receive preferential outcomes to similarly situated women, and in its place is a difficult to follow theory that the FBI's failure to discipline male agents results in women in the FBI not being "equally protected from ███████ as male agents are."   Because Plaintiff never raised to the FBI the version of her disparate impact claim that she includes in the instant District Court Complaint, the FBI never had an opportunity to investigate it, and it should be dismissed for failure to exhaust administrative remedies.

### B.      Plaintiff Also Fails to State a Cognizable Title VII Disparate Impact Claim

Because Plaintiff does not identify a facially neutral policy that causes a disparate impact on the basis of a protected class, Plaintiff's disparate impact claim should be dismissed for failure to state a claim upon which relief may be granted.

A disparate impact claim is distinct from a disparate treatment claim in that disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).  Under a disparate impact theory, a facially neutral employment practice can be found to be discriminatory without the intent required under a disparate treatment theory.   *Id.* (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 644-45 (1989)).  Instead, the theory permits "an inference of discrimination" if "an observed disparity is the systemic result of a specific employment practice that cannot be justified as necessary to the employer's business."  *Segar v. Smith*, 738 F.2d 1249, 1267 (D.C. Cir. 1984). The employee is required to identify a specific employment policy to avoid "holding employers 'liable for a myriad of innocent causes that may lead to statistical imbalances' in a given workplace." *Davis v. District of Columbia*, 925 F.3d 1240, 1249 (D.C. Cir. 2019) (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)).   In other words, simply identifying disparate outcomes will not suffice. *See id*.

In this case, Plaintiff has failed to establish a cognizable claim for unlawful disparate impact.  "[A] plaintiff establishes a *prima facie* disparate-impact claim by showing that the employer 'uses a particular employment practice that causes a disparate impact' on one of the prohibited bases."  *Lewis v. City of Chicago*, 560 U.S. 205, 212 (2010) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).  At the pleading stage, a "plaintiff is not required to prove that the employment practice caused a disparate impact . . . , but only needs to make allegations that state a 'cognizable claim.'"  *Young v. Covington & Burling LLP*, 736 F. Supp. 2d 151, 161 (D.D.C. 2010).  To state a cognizable claim, however, a plaintiff must "identify[ ] the specific employment practice that is challenged," and offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."  *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).  Plaintiff's allegations must be sufficient to make out a plausible claim that the alleged disparity is attributable to the identified practice and that the circumstances are such that a statistical analysis could potentially demonstrate the required causal connection between the disparity and the challenged practice.  *See id.* at 994-97; *Twombly*, 550 U.S. at 555-58, 570 (while there is no "probability requirement at the pleading stage . . . , something beyond . . . mere possibility . . . must be alleged" and the allegations "must be enough to raise a right to relief above the speculative level," and "state a claim for relief that is plausible on its face").  Thus, a "plaintiff must, at a minimum, allege some statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation."  *Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004).  Indeed, it is "not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact."  *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005).

24

Here, it is difficult to discern how the "specific employment practice" that Plaintiff is challenging—the FBI's "disciplinary process"—has a causal connection to a disparity in disciplinary outcomes for women.   In fact, Plaintiff does not claim that women suffer a disparity in rates of hiring, promotions, firings, or other types of discipline, but rather that they are not "equally protected from harassment."  3d Am. Comp. ¶ 150.  This confusing theory seems to conflate the FBI's disciplinary processes with anti-harassment policies and procedures, and does not plausibly allege a disparate impact on women causally connected to the identified facially neutral policy.

Moreover, to sustain a disparate impact claim "a 'plaintiff must generally demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group.'"  *Jianqing Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295, at *1 (D.C. Cir. Dec. 22, 2015) (quoting *Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urban Dev.,* 639 F.3d 1078, 1085–86 (D.C. Cir. 2011)); *see also Hylton v. Watt*, Civ. A. No. 17-2023 (RDM), 2018 WL 4374923, at *3 (D.D.C. Sept. 13, 2018) ("To establish a prima facie case of disparate impact, a plaintiff must demonstrate 'essentially, a threshold showing of a significant statistical disparity.'") (quoting *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009)).  Plaintiffs "may not rely solely on anecdotal allegations regarding an adverse impact on a small group of individuals; they must also plead facts that allow for the plausible inference that the identified policy affected the protected group as a whole."  *Tolton v. Jones Day*, Civ. A. No. 19-0945 (RDM), 2020 WL 2542129, at *26 (D.D.C. May 19, 2020).

Plaintiff has not alleged any statistics or other evidence supporting her claim that the challenged policy or practice has had the disparate impact on women that she identifies—an alleged lack of protection from harassment as compared with men.  Rather, the statistics offered

25

by Plaintiff, two studies by the Department of Justice's Office of Inspector General, relate to the possibility that "penalties are less sever for senior FBI executives than line employees" and that there is a "double standard of discipline in the FBI for higher- and lower-ranking employees."  3d Am. Compl. ¶¶ 111-16.  Differential treatment of higher and lower ranking employees, however, is not Plaintiff's alleged disparate impact harm.  These statistics therefore lend no support to her allegations and do not make the requisite threshold showing of a significant statistical disparity with respect to "protection from harassment."   And while Plaintiff argues generally that Defendants "actions . . . have a disparate impact on women in the FBI," 3d Am. Compl. ¶ 151, "[t]hreadbare recitals of the elements of a cause of action . . . supported by mere conclusory statements . . . do not suffice" to state a claim, *Iqbal*, 556 U.S. at 678.

Courts have long recognized that there is a "myriad of innocent causes that may lead to statistical imbalances in the composition of [employers'] work forces."  *Watson*, 487 U.S. at  994.  Thus, "plaintiff's burden in establishing a prima facie case goes *beyond the need to show that there are statistical disparities in the employer's work force*."  *Id.* (emphasis added).  Rather, Plaintiff must show that "*the practice in question* has caused the exclusion of applicants for jobs or promotions [or, as relevant here, discipline] because of their membership in a protected group."  *Id.* (emphasis added).  Furthermore, a statistical "imbalance in one segment of an employer's work force does not, without more, establish a prima facie case of disparate impact with respect to the selection of workers for the employer's other positions[.]"  *Wards Cove*, 490 U.S. at 653.  Here, nothing in Plaintiff's Third Amended Complaint in anyway demonstrates that the FBI's disciplinary processes and alleged practice of failing to discipline male special agents has adversely impacted women by failing to protect them from harassment as compared to their male colleagues.  Far from it.  She includes not even a veneer of statistical support.

A 2018 decision from another Judge in this District is illustrative of the flaws in Plaintiff's disparate impact claim.   In *Hylton v. Watt*, Civ. A. No. 17-2023 (RDM), 2018 WL 4374923 (D.D.C. Sept. 13, 2018), the plaintiff asserted a disparate impact claim against the Federal Housing Finance Agency.   The plaintiff attempted to rely on an agency-wide reorganization that the plaintiff claimed led to the denial of an Ombudsman position.   *See Hylton*, 2018 WL 4374923 at *4.   The plaintiff claimed that the agency's personnel procedure of re-assigning a Caucasian agency executive to the Ombudsman position, instead of him, had a disparate impact based on race.   *See id*.   The Court granted the defendant's motion to dismiss the disparate impact claim, finding that the plaintiff did not identify a policy or practice that had a disparate impact, but rather the plaintiff was challenging a specific, one-time decision.   *See id*.; *see also Prince v. Rice*, 453 F. Supp. 2d 14, 27 (D.D.C. 2006) (granting motion to dismiss disparate impact claim because the plaintiff did not identify a specific employment practice that was generally applicable and facially neutral).

So too here.   Plaintiff has not identified a specific FBI employment policy or practice that had a disparate impact on women.   Rather, she is challenging a specific, discrete termination decision in which OPR concluded that she lacked candor under oath to the OIG.   In *Hylton*, the court noted that the plaintiff did not identify any other person in a protected class affected by the reorganization.   *See Hylton*, 2018 WL 4374923, at *4.   Similarly, Plaintiff does not identify any other female affected by the alleged policy or practice that she is challenging.

Because Plaintiff's Third Amended Complaint fails to plead a cognizable claim of disparate impact, Count Three should be dismissed in its entirety.   *See Townsend v. United States*, 236 F. Supp. 3d 280, 308 (D.D.C. 2017)  (dismissing disparate impact claim because Plaintiff "offers no statistical or other evidence to support his claim that the policy had a disparate impact

on older employees"); *Jianqing Wu v. Special Couns., Inc.*, 54 F. Supp. 3d 48, 54 (D.D.C. 2014) (dismissing disparate impact claim where plaintiff failed to "allege some statistical disparity").

## IV.     A MORE DEFINITIVE STATEMENT IS APPROPRIATE

Under Rule 12(e) "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  It is appropriate to grant a motion for a more definite statement where the defendant does not have fair notice of the claims and their factual basis.  *See, e.g., Dorsey v. Am. Express Co.*, 499 F. Supp. 2d 1, 3 (D.D.C. 2007) (granting more definite statement when plaintiff failed to adequately describe his claim against bank).  Granting a motion for a more definite statement is appropriate where the defendant cannot understand the precise nature of the claims or where there are "[s]hot-gun pleadings" that allege many bad acts without explaining who is allegedly responsible.  *Cheeks v. Fort Meyer Constr. Corp.*, 71 F. Supp. 3d 163, 168 (D.D.C. 2014) (citing *Feldman v. CIA*, 797 F. Supp. 2d 29, 42 (D.D.C. 2011), and *Hilska v. Jones*, 217 F.R.D. 16, 21, (D.D.C. 2003)); *Gilbert v. Chertoff*, Civ. A. No. 05-2128, 2006 WL 2793169 (D.D.C. Sept. 28, 2006).

As was the case with her previous Complaints, Plaintiff still "lacks specificity or clarity in tying factual allegations to her claims" since the counts "simply incorporate[] all (or almost all) of the preceding paragraphs in her complaint."  ECF No. 61 at 2.  Plaintiff's Third Amended Complaint contains 34 pages of averments (pages 5-39) in 139 numbered paragraphs and includes eight enumerated counts.  3d Am. Compl. ¶¶ 1-183.  Plaintiff's enumerated counts are raised against three separate Defendants: the United States, Defendant Smith, and Attorney General Garland.  *See generally*, 3d Am. Compl.  Each of Plaintiff's three state-law tort claims incorporate the same 65 paragraphs of allegations, *see* 3d Am. Compl. ¶¶ 168, 173, 177 (incorporating ¶¶ 1-3, 5-42, 50, 117-139), and each of Plaintiffs three employment discrimination claims against the

Attorney General incorporate almost all preceding paragraphs of the Third Amended Complaint into each count. *See* 3d Am. Compl. ¶¶ 140 (incorporating ¶¶ 1-102, 135-139), 146 (incorporating the same), 149 (incorporating ¶¶ 1-116, 135-139).  It is therefore virtually impossible to know beyond mere speculation which allegations of fact are intended to support which claims for relief against which named (or subsequently substituted) Defendant.  Specifically, it is impossible to know which allegations of fact are intended to support the sole claim alleged against a Federal Defendant that the Federal Defendants have not moved to dismiss—namely, a claim against the Attorney General that Plaintiff was discriminated against based on race ██, religion ███, sex (female), national origin ████, and reprisal for prior EEO activity when on January 22, 2020, she learned that the decision to remove her from the rolls of the FBI had been upheld by the Disciplinary Review Board.

The Federal Defendants therefore move pursuant to Rule 12(e) for entry of an order requiring Plaintiff to provide a more definite statement for any claim that survives the Federal Defendants' Motion to Dismiss in Part, so that the fourth amended complaint consists of a plain statement of the claims for relief.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the United States from the Third Amended Complaint.  Additionally, the Court should dismiss Plaintiff's Title VII disparate impact claim (Count 3) against Attorney General Garland for failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted, and should dismiss Plaintiff's two Title VII disparate treatment claims (Counts 1 and 2) to the extent they arise from actions prior to January 26, 2018, that were not timely administratively exhausted.  The Federal Defendants respectfully request that Plaintiff be ordered to file a fourth amended complaint consisting of a

plain statement of the claims for relief that remain with respect to each Defendant after the Federal

Defendant's Motion to Dismiss in Part has been resolved.

Dated:  February 21, 2022
        Washington, DC

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Acting Chief, Civil Division

                                        By: /s/ *Diana V. Valdivia*
                                        DIANA V. VALDIVIA, D.C. Bar # 1006628
                                        Assistant United States Attorney
                                        555 4th Street, N.W.
                                        Washington, D.C. 20530
                                        T: (202) 252-2545
                                        diana.valdivia@usdoj.gov

                                        *Counsel for the Federal Defendants*