**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**JANE DOE**,

　　　　　　Plaintiff,

　　v.

**UNITED STATES OF AMERICA**, *et al.*,

　　　　　　Defendants.

---

Case No. 1:20-cv-3553

**MEMORANDUM OPINION**\*

　　Plaintiff Jane Doe is a former employee of the Federal Bureau of Investigation.  She alleges that her supervisor (Defendant John Smith)[1] engaged in a variety of sexual and criminal misconduct towards her.  The FBI eventually terminated Doe for lying to investigators about the nature of her relationship with Defendant Smith.  She now sues Attorney General Garland (as head of the FBI's parent agency), alleging that the Bureau discriminated against her on the basis of sex, race, religion, national origin, and ethnicity.  She also sues Smith individually, alleging that he committed common law assault, battery, and intentional infliction of emotional distress.  Defendants move to dismiss and for a more definite statement.  Having reviewed the pleadings, the briefing, and the law, the Court will grant their motions.

　　Doe failed to timely exhaust some of her Title VII claims, so those claims must be dismissed.  Doe's tort claims against Defendant Smith must also be dismissed because the Court does not have supplemental jurisdiction or diversity jurisdiction to resolve them.  The Federal

---

\*  The Memorandum Opinion was issued **under seal** on September 26, 2022. This version contains redactions of confidential information.
[1]  Given the sensitive nature of the allegations here, the Court granted the parties leave to proceed anonymously.  *See* Order, ECF No. 2.

Defendants move for a more definite statement of Doe's remaining claims and she does not

object, so the Court will order a new pleading.

**I.**

Jane Doe is an ▮▮▮▮▮ woman who lives in ▮▮▮▮▮▮▮▮▮▮, a community with

the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Third Amend.

Compl. (TAC) ¶¶ 18, 19, ECF No. 65.  After serving honorably in the Army National Guard,

Doe took a job at the FBI's ▮▮▮▮▮▮▮▮▮▮ as a ▮▮▮▮▮▮▮▮▮▮▮,

working to "restore trust between law enforcement and . . . ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ communities." *Id.* ¶ 24, 43.

Smith became the ▮▮▮▮▮▮▮▮▮▮ of the ▮▮▮ shortly after Doe arrived.  *Id.* ¶

50.  Starting in late-2012, Smith allegedly "began to single out [Doe] by calling her into his

office and demanding [she] attend certain meetings with him."  *Id.* ¶ 52.  His conduct then

escalated.  Smith allegedly intervened in Doe's divorce proceedings, required Doe to disclose

intimate details of her life, demanded access to her personal electronic devices, and threatened

her about reporting his misconduct.  *Id.* ¶ 55–58.  Smith also threatened to spread lascivious

falsehoods in Doe's conservative community because impugning her honor could endanger her

reputation and safety.  *Id.* ¶ 63.  And he allegedly repeatedly sexually assaulted her.  *See id.* ¶¶

61, 64, 65, 68.

Smith also referred Doe and her ex-husband to the Office of the Inspector General (OIG)

for an investigation into her distressed real estate sale, prompting a multi-year investigation.  *Id.*

¶ 69.  In September 2018, the FBI's Office of Professional Responsibility (OPR) recommended

terminating Doe "for allegedly participating in a conspiracy to commit mortgage fraud" and for

"lack of candor regarding: (a) certain mortgage documents regarding short sales of properties;

2

(b) the extent of her involvement in a short sale; (c) whether she received cash from the short sale of a property on an unrelated matter; and (d) her relationship with [Smith]." *Id.* ¶ 79. The FBI's Departmental Review Board (DRB) disagreed with OPR's findings on the mortgage fraud but affirmed its determination that Doe had lied about her relationship with Smith. *Id.* ¶ 83. DRB therefore upheld her termination, which became final in January 2020. *Id.* ¶¶ 83, 86.

Smith left the ███████ to be a Special Agent in the FBI's ███ Field Office. *Id.* ¶ 72. While in ███ he allegedly continued to coerce Doe to "proceed forward with the relationship." *Id.* ¶ 73. He insisted that Doe visit him in ███ to "support[] him through the bar exam," and during that visit allegedly raped her. *Id.* ¶ 124. Doe says the harassment, threats, and controlling behavior persisted until as late as July 2020 when her counsel sent him a cease-and-desist letter. *Id.* ¶ 134.

Doe contacted the FBI's Equal Employment Office (EEO) on March 12, 2018, *see* Fed. Def.'s Mot., Ex. A (June 5, 2018 Report of Counseling) at 3, ECF No. 75-2, and later filed a formal EEO complaint alleging that she had faced a hostile work environment, sexual harassment, and reprisal based on Smith's conduct from ███████, *see id.*, Ex. B (May 13, 2018 EEO Complaint) at 1. She also claimed that the FBI discriminated against her based on race, national origin, sex, parental status, and for prior EEO activity when it suspended her at OPR's recommendation. *See id.* at 4. The EEO accepted Doe's claims related to her suspension but found the remaining claims untimely. *See id.*, Ex. C (Nov. 2018 EEO Letter).[2] Doe contacted the EEO again on March 4, 2020, *see id.*, Ex. D (May 7, 2020 Report of Counseling), and eventually filed a formal complaint arguing that the DRB discriminated against her in

---

[2] The Court may take judicial notice of "administrative orders and administrative complaints without converting the motion into one for summary judgment." *Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–10 (D.D.C. 2016).

upholding her termination, *see id.*, Ex. E (April 2020 EEO Complaint).  The EEO accepted that claim as well.  *See id.*, Ex. F (June 11, 2020 Letter).

Doe filed this lawsuit before receiving a final administrative decision on her EEO claims. *See* Compl., ECF No. 1-3.  The Court has since liberally granted Doe leave to amend her pleadings.  *See* Minute Order (May 6, 2021); *see also* ECF No. 61.  In this Third Amended Complaint, she sues Attorney General Merrick Garland and Defendant Smith.  *See* TAC ¶ 1. Three of eight claims run against the Attorney General: (1) Title VII disparate-treatment, TAC ¶¶ 140–45; (2) Title VII retaliation, *id.* ¶¶ 146–48; and (3) Title VII disparate-impact, *id.* ¶¶ 149–53. The remaining five run against Smith in his individual capacity: (4) a Fourth Amendment constitutional-tort claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), TAC ¶¶ 154–59; (5) a Fifth Amendment *Bivens* claim, *id.* ¶¶ 160–67; (6) a civil battery claim, *id.* ¶¶ 168–172; (7) a civil assault claim, *id.* ¶ 173–76; and (8) an intentional infliction of emotional distress claim, *id.* ¶¶ 177–83.

The United States is substituted as a defendant to Doe's tort claims when "they are supported by the conduct certified by the Attorney General's designee" as falling within the scope of Smith's employment.  Order on Westfall Cert., ECF No. 68.

The Attorney General and the United States (collectively, Federal Defendants) move to dismiss under Federal Rules 12(b)(1) and 12(b)(6), as well as for a more definite statement under Rule 12(e).  *See* Fed. Def.'s Mot., ECF No. 75.  They argue Doe exhausted no Title VII claims except for those accepted by the EEO; that she failed to state a disparate-impact claim; and that her tort claims must be dismissed when they run against the United States.  Smith also moved to dismiss.  *See* Smith's Mot., ECF No. 71.  He makes thirteen motions on a variety of state and federal grounds seeking to dismiss all of Doe's claims against him.  *See id.* at 2–8.  Doe

submitted a combined opposition but voluntarily dismissed both *Bivens* claims, her Title VII disparate-impact claim, and any tort claims against the United States.  *See* Opp'n 4–5, ECF No. 78.  The motions are now ripe for resolution.

## II.

A complaint must contain "a short and plain statement of the grounds for the court's jurisdiction," as well as a "statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1), (2).  A defendant may move to dismiss for failure to satisfy either of these requirements.  *See id.* 12(b)(1), (6).

When a defendant moves to dismiss for lack of subject matter jurisdiction, the Court must presume that "a cause lies outside [its] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and the plaintiff bears the burden of overcoming that presumption, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  While the Court accepts factual allegations in the complaint as true, those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Nepal v. U.S. Dep't of State*, --- F. Supp. 3d ---, 2022 WL 1500561 at *3 (D.D.C. May 12, 2022). And the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  *Jerome Stevens Pharma., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint must raise "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line

between possibility and plausibility." *Twombly*, 550 U.S. at 545–46.  In evaluating a motion to dismiss, legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not afforded the presumption of truth.  *Iqbal*, 556 U.S. at 678.  The Court is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice."  *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## III.

Start with Doe's Title VII disparate-treatment claims against the Attorney General.  The Federal Defendants argue Doe has not adequately exhausted most of those claims.  The Court agrees.[3]

## A.

Federal employees asserting Title VII claims must "initiate contact with [an EEO] Counselor within 45 days of the . . . matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  The Supreme Court teaches that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  That means "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.*

Doe first contacted an EEO counselor on March 12, 2018, so any claims accruing before January 26, 2018, are facially time-barred.  She recognizes as much but asks the Court to excuse her failure to exhaust under equitable tolling or equitable estoppel.  *See* TAC ¶¶ 34–42.

In "Title VII cases, equitable tolling . . . can occur in several circumstances."  *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997).  Courts apply tolling where a *pro se* claimant

---

[3]  The Court has federal question jurisdiction over Title VII claims.  *See* 28 U.S.C. § 1331.

makes "diligent but technically defective efforts to act within a limitations period," *id.* (citing *Irwin v. Dep't of Vet'ns Affs.*, 498 U.S. 89, 95–96 (1990)); where the claimant was "misled about the running of a limitations period," *id.* (citing the same); or where a claimant "neither knew nor had reason to know about the limit," *id.* (citing *Bayer v. Dep't of Treasury*, 956 F.2d 330, 334 (D.C. Cir. 1992)).

The doctrine of equitable estoppel is different.  To invoke estoppel, a claimant must show (1) the party asserting a limitations defense made a "definite representation" to the claimant; (2) the claimant "relied on its adversary's conduct in such a manner as to change [her] position for the worse"; and (3) the claimant's "reliance was reasonable."  *Morris Comms., Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009).  But "equitable estoppel will not lie against the Government as it lies against private litigants."  *Off. of Pers. Mgmt. v. Richmond*, 469 U.S. 414, 419 (1990) (leaving unresolved whether estoppel *ever* applies against federal agencies).

To estop the Government, a claimant must also show an official engaged in "affirmative misconduct" beyond mere negligence.  *Morris*, 566 F.3d at 191.  And it must "manifestly appear that the agent was acting within the scope of his authority, and was empowered, in his capacity of agent, to make the declaration or representation which is relied on as the ground of relief."  *Lee v. Munroe*, 11 U.S. 366, 368 (1813).  Were it otherwise, courts would indirectly vest "lower-ranking government officials and employees [with] power to bind the government."  33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8354 (2d ed.).

Doe uses "tolling" and "estoppel" interchangeably, *see* Opp'n 8–9, but her factual allegations appear to invoke equitable estoppel.  She does not allege that the FBI (or its agents) "misled [her] about the running of a limitations period," *Irwin*, 498 U.S. at 95–96; or that she "neither knew nor had reason to know about the limit," *Bayer*, 956 F.2d at 334; or that she made

"diligent but technically defective efforts" to exhaust her administrative remedies, *Irwin*, 498 U.S. at 95–96.  Instead, she says the 45-day exhaustion requirement should not apply "due to the duress and threats to Plaintiff by Defendant Smith."  TAC ¶ 34; *see* 51 Am. Jur. 2d *Limitation of Actions* § 366 (noting "estoppel by duress requires a showing of continuous threats and abuse during the limitation period").  She alleges Smith told her "something bad would happen" and "threatened to have her children taken away, threatened her family and friends, and threatened her if she were to talk to anyone."  *Id.* ¶ 35.

Perhaps that conduct might warrant estopping Smith from asserting a limitations defense.  But the Court cannot attribute Smith's misconduct *to the Government* without a showing that he acted "within the scope of [his official] authority."  *Richmond*, 496 U.S. at 419–20; *see also Munroe*, 11 U.S. at 368.  Generally, an agent's conduct is attributable to his employer only if: (1) it is "the kind he is employed to perform"; (2) it occurs "within the authorized time and space limits"; *and* (3) it is "actuated, at least in part, by a purpose to serve [his] master."  Restatement 2d of Agency § 228 (1958); *see also Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (invoking this definition).

Applying that standard here, Doe has not alleged that Smith was acting within the scope of his authority in threatening her.  Doe says Smith threatened violence if she reported his sexual harassment and misconduct.  *See* TAC ¶ 34.  But, not surprisingly, nothing in the Complaint supports an inference Smith was "employed to" make that kind of representation; nor is there any indication Smith's aim in threatening Doe was to "serve" the FBI or its mission.  So there is no basis to attribute Smith's misconduct to the Government.  *See* Restatement 2d of Agency § 228, cmt. b (1958) ("Proof that the actor was in the general employment of the master does not of itself create an inference that a given act done by him was within the scope of employment");

*cf. Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006) (holding a congressman acted within the scope of his employment when he allegedly defamed an individual during a press call because "speaking to the press during regular work hours . . . falls within the scope of a congressman's authorized duties").

Doe appears to agree.  Her Opposition stridently argues that Smith "was acting as an individual" when he committed "the common law torts."  Opp'n at 4 n.2.  But one of those tort claims is that Smith committed civil assault when he "threatened to kill [Doe] and harm her family if she spoke to anyone about" his alleged sexual misconduct.  TAC ¶ 174.  Doe has thus effectively waived any argument that Smith's threats are attributable to the Government—for estoppel purposes or otherwise.

The Circuit has been clear: "estoppel's application to the Government should be rigid and sparing."  *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988).  Without a more substantial showing that Smith's threats fell within his authority, the Court will not estop the Government from asserting Title VII's 45-day exhaustion requirement.  Doe's disparate-treatment claims accruing before January 26, 2018, will be dismissed as untimely.[4]

**B.**

The Federal Defendants ask the Court to order a more definite statement as to Doe's remaining Title VII disparate-treatment claims about her termination from the FBI.  *See* Fed. Def.'s Mot. at 28–29; *see also* Fed. R. Civ. P. 12(e) (authorizing parties to "move for a more

---

[4]  Doe argues that a jury must decide whether she is entitled to equitable estoppel.  *See* Opp'n at 11.  That is because "the key issue for equitable estoppel is whether Defendant Smith's threats to kill Plaintiff and her family are credible and whether this reasonably excused her from filing in a timely manner."  *Id.*  Not so.  Even if the Court assumes Smith's threats were credible, that Doe's reliance on them was reasonable, and that she pursued her rights diligently, her allegations do not support attributing Smith's threats to the Government.  The Court's holding does not depend on resolving those disputed issues of fact.

definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response").  Doe has voluntarily dismissed three counts in her Complaint and the Court will dismiss another three counts (the common law torts).  *See* Part III, *infra*.  It is therefore appropriate for Doe to file a new, detailed complaint alleging those facts necessary to support her remaining claims.  Because Doe "does not object," Opp'n at 25, the Court will order a more definite statement.

## IV.

Now for Doe's claims against Smith.  The parties mainly dispute whether Doe's tort claims are timely under applicable state-law limitations periods.  But the Court may not reach those arguments because it does not have supplemental or diversity jurisdiction to resolve them. *See Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982) ("It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*.").

### A.

When a court has original jurisdiction over a plaintiff's claims, it may also exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  State and federal claims are "related" where they "derive from a common nucleus of operative fact."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  So, for example, it is appropriate to exercise supplemental jurisdiction where "the same acts violate parallel federal and state laws" or where "the facts necessary to prove a violation of one are practically the same as those needed to prove a violation of the other."  *Lindsay v. Gov't Emps. Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) (citations omitted).

Even if the "common nucleus" test is satisfied, a district court "may decline to exercise supplemental jurisdiction" in some cases.  28 U.S.C. § 1367(c); *see also Gibbs*, 383 U.S. at 726 ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  Courts may decline supplemental jurisdiction if:  (1) the "claim raises a novel or complex issue of State law"; (2) the state-law claim "substantially predominates over" the original-jurisdiction claim; (3) the district court "has dismissed all claims over which it has original jurisdiction"; or (4) there are other "compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(1)–(4).

Here, there is no supplemental jurisdiction over Doe's tort claims because they do not derive from a "common nucleus of operative fact" with her federal claims.  *Gibbs*, 383 U.S. at 725.

To start, there is no legal overlap between the elements necessary to prove Doe's tort and Title VII claims.  A prima facie Title VII disparate-treatment claim requires a plaintiff to show that her "employer intentionally treats some people less favorably than others because of their race, color, religion, sex, or national origin."  *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019).

The state law claims are quite different.  Assault requires the plaintiff to demonstrate that the defendant acted "intending to cause a harmful or offensive contact" or "an imminent apprehension of such a contact," and that the plaintiff was "thereby put in such imminent apprehension."  Restatement 2d of Torts § 21 (1965).  Battery requires a plaintiff to show that the defendant acted "intending to cause a harmful or offensive contact" with the plaintiff and "harmful contact with the person of the other directly or indirectly results."  *Id.* § 13.  As for intentional infliction of emotional distress, a plaintiff must prove that the defendant engaged in

11

"extreme and outrageous conduct" that "intentionally or recklessly causes severe emotional distress." *Id.* § 46. Given these differences, it is not as if "the facts necessary to prove a violation of one are practically the same as those needed to prove a violation of the other." *Lindsay*, 448 F.3d at 424.

Likewise, there is almost no factual overlap between the conduct supporting Doe's Title VII and tort claims.

Doe's remaining exhausted Title VII claims concern the FBI's decision to terminate her and the DRB's subsequent decision upholding her termination. *See* TAC ¶ 141. In contrast, Doe's common law tort claims assert that Smith engaged in a variety of misconduct unrelated to the OIG/DRB process. She says Smith committed battery by isolating her, threatening her, and sexually assaulting her. TAC ¶¶ 169–71. She claims the same actions prove assault. *Id.* ¶ 174. And her IIED claims allege that Smith engaged in "extreme and outrageous conduct" while "acting in his individual capacity." *Id.* ¶¶ 178, 179.

The only potential factual overlap here is that Smith allegedly referred Doe to OIG for investigation. To be sure, Doe alleges that the FBI terminated her to "cover up" Smith's sexual misconduct, *id.* ¶ 141, but the Court need not blindly accept that kind of conclusory allegation of illicit purpose, *see Olaniyi v. District of Columbia*, 763 F. Supp. 2d 70, 85 (D.D.C. 2011) (noting "conclusory allegations are not entitled to an assumption of truth"). That is particularly true when, as here, there are "more likely explanations" for the FBI's conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Doe herself acknowledges that "OIG investigators [] determined she lacked candor related to her relationship with Defendant Smith, and she was removed from the rolls of the FBI." TAC ¶ 85. But even if the Court accepted as true that the FBI terminated Doe

to cover up Smith's misconduct, that fact would only be relevant to her Title VII claim; it would not support her tort claims.  This is a thin reed connecting the two.

There is thus a significant difference between the legal and factual grounds supporting Doe's claims.  *Cf., e.g.*, *Chelsea Condo. Unit Owners Ass'n v. 1815 A. St., Condo. Grp., LLC*, 468 F. Supp. 2d 136, 138–39 (D.D.C. 2007) (finding no supplemental jurisdiction over state law claims alleging misrepresentations during marketing of condominiums where federal law claims alleged conflict of interest during the same sale).  That difference is particularly stark given cases in which state and federal claims were "related" for purposes of § 1367(a).  *Cf., e.g.*, *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 921 (D.C. Cir. 1996) (finding a common nucleus of operative facts where state and federal claims both arose from the District's alleged failure to provide for the needs of female prisoners); *Lindsay*, 448 F.43d at 424 (finding two classes of claims were related where "members of both classes performed the same type of work for the same employer and were deprived of overtime compensation as a result of the same action taken by their employer"); *LaShawn v. Barry*, 87 F.3d 1389, 1391 (D.C. Cir. 1996) (finding a common nucleus of operative facts where state and federal claims arose from the District's allegedly deficient foster care system).

Given the fundamental differences between Doe's Title VII claims and her tort claims, she would not "ordinarily be expected to try them all in one judicial proceeding."  *Gibbs*, 383 U.S. at 725.  By extension, original jurisdiction over the former does not confer supplemental jurisdiction over the latter.

But that is not the only problem Doe faces.  Even if her state and federal claims were sufficiently related, the Court would still decline to exercise supplemental jurisdiction because her state claims "substantially predominate" over her federal claims.  28 U.S.C. § 1367(c)(2).

As the D.C. Circuit has noted, courts routinely "decline[] to exercise pendent jurisdiction over related state claims when the only substantial federal claim ar[ises] under Title VII." *Bouchet v. Nat'l Urb. League, Inc.*, 730 F.2d 799, 805 (D.C. Cir. 1984) (Scalia, J.) (collecting cases). That is because there is "a great discrepancy between the relatively limited equitable relief under Title VII (reinstatement and back pay) and the much broader relief sought under . . . state causes of action (full compensatory and punitive damages)." *Id.* That holds true here—Doe's tort claims are far more substantial in terms of the "scope of the issues raised" and "the comprehensiveness of the remedy sought." *Gibbs*, 383 U.S. at 726–27. Her tort allegations involve conduct occurring over several years in at least two states, various liability and credibility witnesses, and more than $60 million in damages claims against Smith. Those claims "would be pendent to this Title VII litigation much as a dog is pendent to its tail." *Bouchet*, 730 F.2d at 806.

In sum, the Court does not have supplemental jurisdiction over Doe's state tort claims and would decline to exercise that jurisdiction if it existed.

## B.

The Court also does not have diversity jurisdiction over Doe's tort claims. District courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the suit is between "citizens of different states." 28 U.S.C. § 1332(a), (a)(1). Doe seeks well over $75,000 in damages, so the amount in controversy requirement is easily satisfied. Her complaint also alleges that Smith is "a resident of the State of Florida," TAC ¶ 8, but "an allegation of residence alone is insufficient to establish the citizenship necessary for diversity jurisdiction." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n. 20 (D.C. Cir. 1983); *see also Steigleder v. McQuesten*, 198 U.S. 141, 143 (1905) (noting residence

and citizenship are "wholly different things" for diversity jurisdiction).  Her pleadings therefore do not support diversity jurisdiction.  And she never suggests otherwise.

## V.

In sum, Doe failed to timely exhaust any Title VII claims accruing before January 26, 2018.  She is not entitled to equitable estoppel or tolling of Title VII's 45-day exhaustion requirement, so those claims will be dismissed for failure to state a claim.  The Court does not have supplemental or diversity jurisdiction over Doe's tort claims against Defendant Smith, so those claims will be dismissed without prejudice for lack of jurisdiction.  The Federal Defendants request a more definite statement of Doe's remaining Title VII claims (and she does not object), so the Court will order her to file a new, streamlined complaint.[5]


Dated: September 26, 2022                         _____
                                                  TREVOR N. McFADDEN, U.S.D.J.

---

[5]  Smith also moved to strike "scandalous or impertinent matter" from the filings.  That motion will be denied.  This is not one of the rare circumstances when such a motion is warranted, especially given that both parties are proceeding pseudonymously here.